UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/29/2015
```

-------------------------------------------------------------- X
                                                               :
I.C., a minor, by her mother and natural guardian      :
Ellen Solovsky,                                                :
                                        Plaintiff,     :          1:14-cv-7289-GHW
                                                               :
                      -against-                        :          MEMORANDUM OPINION
                                                               :              AND ORDER
DELTA GALIL USA and SOCK DRAWER, LLC,      :
                                       Defendants.     :
-------------------------------------------------------------- X

GREGORY H. WOODS, District Judge:

## I.  INTRODUCTION

        Miss Matched, Inc., a children's clothing and accessory company, sponsored a contest in

2011 at a New York elementary school, giving students the chance to submit original t-shirt designs

in the hopes of having that design featured on a t-shirt.  Winning students received $100 gift card

and five t-shirts bearing their design, but the contest rules also broadly assigned the ownership rights

of submitted designs to Miss Matched.  Plaintiff, a minor bringing this action by her mother and

natural guardian, entered and won the contest.  After discovering that her design spawned an entire

catalogue of clothing and accessories, she brought suit for copyright infringement and state law

claims for unjust enrichment and quantum meruit against two successor companies of Miss

Matched.  For the reasons outlined below, defendants' motion to dismiss is GRANTED in part and

DENIED in part.

## II.  BACKGROUND[1]

        Miss Matched, Inc. sponsored a contest at P.S. 116, an elementary school in the Kips Bay

neighborhood of Manhattan, in the fall of 2011.  Am. Compl. at ¶ 11, Dkt. No. 47.  The contest,

---

[1] Unless otherwise noted, the facts are taken from the amended complaint, and are accepted as true for the
purposes of this Rule 12(b)(6) motion.  *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

"LittleMissMatched's TEE OFF! PROJECT TEE," offered students the chance to design a t-shirt for the company's LittleMissMatched brand of clothing. *Id.* LittleMissMatched is a girls' clothing brand that generally features bright, contrasting colors and purposely mismatched, but coordinated, designs. *Id.* at ¶ 9. Contest entrants were judged based on "[e]xecution of the theme," "[o]riginality," and "representation of brand message." Contest Rules at ¶ 6, Dkt. No. 47-1. The winning design entry would be featured on a t-shirt, and the winner would receive $100 gift card and five t-shirts with his or her design. Am. Compl. at ¶ 11; Contest Rules at ¶ 4.

The contest rules included in the students' submission forms provided that the ownership rights for all contest entries, including the copyrights for all designs submitted, became the property of Miss Matched—either because the entries were works "made for hire" or because the students agreed to assign all ownership rights to Miss Matched. Am. Compl. at ¶ 13; Contest Rules at ¶ 5. Specifically, the contest rules state:

> By entering, you agree that your entry shall be a "work made for hire" with all rights therein, including, without limitation, the exclusive copyright, being the property of Sponsor. In the event the entry is considered not to be a "work made for hire," by entering, you irrevocably assign to Sponsor all right, title, and interest in your Content, design and entry (including, without limitation, the copyright) to Sponsor, including in any and all media whether now known or hereafter devised, in perpetuity, anywhere in the world, with the right to make any and all uses thereof, including, without limitation, for purposes of advertising or trade.

*Id.*

I.C., a second grade student at the elementary school, created a design for the contest in October 2011. Am. Compl. at ¶¶ 13, 15. Her design was hand-drawn on a template provided by Miss Matched. Am. Compl. at ¶ 18; Contest Submission, Dkt. No. 47-2. The design consists of a smiley face on the front of the t-shirt, with the word "Hi" written above and below the face; and a frowning face on the back of the t-shirt, with the word "bye" written above and below the face.

---

However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Am. Compl. at ¶ 16; Contest Submission.  I.C. and her mother signed the submission form, and she

submitted her contest entry, the "Hi/Bye" design, to Miss Matched on October 21, 2011.  Am.

Compl. at ¶¶ 18, 20; Contest Submission, Dkt. No. 47-2.  Her design is pictured below:



        In February 2012, Miss Matched announced that I.C. was one of two contest winners

selected from her elementary school.  Am. Compl. at ¶ 22.  In the announcement, Miss Matched

offered t-shirts featuring the two winning designs for sale to other students at her elementary school.

Announcement, Dkt. No. 47-3.  I.C. received a $100 gift card and five t-shirts with the "Hi/Bye"

design for winning the contest, but did not receive compensation from Miss Matched for any sales

of t-shirts with her design.  Am. Compl. at ¶¶ 23–24.  Subsequent sales of the Hi/Bye t-shirt were

not limited to I.C.'s elementary school; indeed, an entire catalogue of clothing and accessories

bearing that design continues to be sold under the LittleMissMatched brand, expanding from t-shirts

to socks, purses, and headphones, among other items.  Am. Compl. at ¶ 32, Catalogue, Dkt. No. 47-

4.  A picture of the t-shirt bearing the Hi/Bye design sold by Miss Matched is shown below:



Miss Matched subsequently went out of business, but sold all of its assets to defendant Sock Drawer in December 2012.  Am. Compl. at ¶ 25.  Sock Drawer in turn sold the Miss Matched assets to defendant Delta Galil.[2]  *Id.*  Delta Galil continued Miss Matched's business, and continues to sell clothing and accessories with the Hi/Bye design under the LittleMissMatched brand.  Am. Compl. at ¶ 26.

In April 2014, plaintiff sent a letter to Miss Matched, purporting to disaffirm any contract that I.C. entered into with Miss Matched or any affiliated company.  Am. Compl. at ¶ 29.  That same month, plaintiff submitted an application to register the Hi/Bye design with the United States Copyright Office.  The Copyright Office rejected the application on June 26, 2014, finding that the design "lacks the authorship necessary to support a copyright claim."  *Id.* at ¶¶ 33–34.

Plaintiff filed this suit on September 9, 2014.  In order to satisfy the procedural requirements of 17 § U.S.C. 411(a) and 37 C.F.R. § 205.13, plaintiff served a notice of initiation of this action and

---

[2] Both Sock Drawer and Delta Galil contest that the purchase of Miss Matched's assets make them corporate successors to Miss Matched.  The Court makes no finding on this issue, but assumes the facts alleged in the complaint to be true and that defendants are successors to Miss Matched for purposes of deciding this motion.

a copy of the complaint on the Register of Copyrights by certified mail on September 12, 2014. Affidavit of Service, Dkt. No. 24. Defendants subsequently informed plaintiff that the delivery address listed in the affidavit was not the correct address for the Copyright Office, which under 37 C.F.R. § 205.13 requires that notice and complaints served by certified mail be sent to a different address than those delivered by hand. Plaintiff attempted to correct the deficiency, and served the notice and complaint on the Register of Copyrights by certified mail to the correct address specified in the regulation. Affidavit of Service, Dkt. No. 35. Section 205.13 also specifies that the Department of Justice and the United States Attorney for the district in which the action is brought must also receive notice and a copy of the complaint, which plaintiff served on November 14, 2014. Affidavits of Service, Dkt. Nos. 25–26.

Defendants filed motions to dismiss plaintiff's complaint on January 2 and January 5, 2015, respectively. The Court thereafter ordered that plaintiff could file an amended complaint to address any deficiencies therein, but cautioned that plaintiff could not expect further opportunities to amend the complaint to address the issues raised in defendants' motions. Dkt. No. 46. Plaintiff filed an amended complaint on January 23, 2015, alleging claims for copyright infringement under 17 § U.S.C. 501 (Count 1), as well as New York state law claims for quantum meruit (Count 2) and unjust enrichment (Count 3). Defendants filed separate motions to dismiss the amended complaint on February 13, 2015, but each defendant incorporated the arguments of the other by reference in order to avoid duplicative arguments.

## III.   ANALYSIS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts, when accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). While a complaint need not present "detailed factual allegations," *Twombly,* 550 U.S. at

555, legal conclusions, unsupported by factual assertions, are insufficient. *Iqbal,* 556 U.S. at 679.  In

considering a motion to dismiss, the Court "may consider the facts alleged in the complaint,

documents attached to the complaint as exhibits, and documents incorporated by reference in the

complaint." *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010); *see also* Fed. R. Civ. P.

10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all

purposes.").

### A.  Copyright Infringement

In order to establish copyright infringement, a plaintiff must prove two elements:

"(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are

original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  Defendants argue that

plaintiff's copyright infringement claim must be dismissed for a host of reasons, but the Court first

turns to whether plaintiff has satisfied the procedural requirements set forth in the Copyright Act

and whether plaintiff has standing to bring a claim.

#### 1.  Notice Requirement

As an initial matter, defendants argue that plaintiff failed to comply with the mandatory

notice requirement set forth in 17 U.S.C. § 411(a) and 37 C.F.R. § 205.13.  Plaintiff initially sent

notice of the suit and a copy of the complaint to the incorrect address for the Register of

Copyrights, and only corrected that error on November 16, 2014, over two months after filing suit.

Moreover, plaintiff did not send the required notice to the Department of Justice and the United

States Attorney for the Southern District of New York until that same date.  Thus, because plaintiff

failed to properly comply with the notice requirement until two months after the present suit was

initiated, and the requirement is a prerequisite to filing suit, defendants contend that plaintiff's suit

must be dismissed.  The Court disagrees.

The notice requirement in § 411(a) has been described as "undemanding" because it "merely provides that the [Copyright] Office must be accorded a second opportunity to express its views on the claim's validity after suit is filed if it has refused to recognize the claim before the suit is filed." *Brooks-Ngwenya v. Indianapolis Pub. Sch.*, 564 F.3d 804, 807 (7th Cir. 2009) (per curiam) (quoting S. Rep. No. 100-352, at 14 n.2 (1988)).  Under 17 U.S.C. § 411(a), an applicant who is denied a registration by the Copyright Office may nonetheless bring a civil action for copyright infringement, provided that the applicant comply with the notice requirement set forth in the statute.  Specifically, § 411(a) requires that the applicant serve notice of the institution of a civil action, along with a copy of the complaint, on the Register of Copyrights.  Thereafter, "[t]he Register may, at his or her option, become a party to the action with respect to the issue of registrability of the copyright claim by entering an appearance within sixty days after such service."  17 U.S.C. § 411(a).  The provisions in 37 C.F.R. § 205.13 describe how service may be accomplished, and also require that the Department of Justice and the United States Attorney for the district in which the action is brought also be served.  Although not jurisdictional, the notice requirement is nevertheless a "prerequisite to suit."  *Brooks-Ngwenya*, 564 F.3d at 807.

Dismissing plaintiff's claim on these narrow procedural grounds, as urged by defendants, would be inefficient and serve no purpose in this case, at this stage of the proceedings.  First, Defendants do not contest that the required notice has now been served, and the sixty days in which § 411(a) allows the Register of Copyrights to enter an appearance have come and gone.  The Register has not done so.  Fundamentally, it is not clear what purpose dismissing plaintiff's infringement claim would serve at this juncture—the Court would simply grant plaintiff leave to re-file, and because plaintiff has already fulfilled the notice requirement, she would be free to reinstitute the action immediately.

Moreover, defendants rely heavily on language from *Brooks-Ngwenya* for the proposition that plaintiff must provide the requisite notice prior to filing suit, or plaintiff's infringement claim should be dismissed. But in that very case, the court proceeded to the merits of the litigation—despite the plaintiff's failure to properly comply with the notice requirement—after the Register "weigh[ed] in during the litigation" by granting the plaintiff's renewed application. *Id.* at 808. Thus, the court held that the purpose of the notification requirement was fulfilled, regardless of whether plaintiff sent a copy of the complaint to the Register—indeed, the defendant's point was entirely "now academic." *Id.* Just as in *Brooks-Ngwenya*, the purpose of the notice requirement in § 411(a) has been fulfilled because the Register has been afforded the opportunity to weigh in on the registrability of plaintiff's copyright claim, but here chosen not to do so.

Although stated in the employment discrimination context, the Second Circuit's guidance in *Dalessandro v. Monk* is instructive. F.2d 6 (2d Cir. 1988). In *Dalessando*, the district court dismissed a plaintiff's claim because he filed suit prematurely, after filing charges with the EEOC but before the sixty-day waiting period required by 29 U.S.C. § 626 had lapsed. *Dalessandro*, F.2d at 7–8; *see also* 29 U.S.C. § 626(d)(1) ("No civil action may be commenced by an individual . . . until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission."). The Second Circuit reversed, finding that the plaintiff's suit should have been stayed pending expiration of the waiting period, rather than dismissed. *Id.* at 9. In reaching that decision, the Second Circuit explained that "generally 'suspension of proceedings is preferable to dismissal with leave to refile' as a remedy for premature filing of discrimination suits." *Id.* (quoting *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 765 n.13 (1979) (brackets omitted)). Here, because the sixty-day waiting period required by § 411(a) has already expired, there is no need to stay the case. Because the purpose of the notice requirement in § 411(a) has been fulfilled, dismissal is also inappropriate.

8

### 2. *Assignment of Copyright*

Both parties present the question of whether plaintiff's Hi/Bye design possesses the requisite originality to be copyrightable as a threshold question. But before the Court can turn to that issue, the Court must first resolve whether plaintiff has standing to bring this suit at all. Under the Copyright Act, only the "legal or beneficial owner" of an exclusive right under a copyright is entitled to bring an action for copyright infringement. 17 U.S.C. § 501(b). Defendants argue that plaintiff has no ownership rights to the design's copyright because her contest submission was prepared as a "work for hire," or in the alternative, because plaintiff assigned all ownership rights to Miss Matched. If plaintiff has no ownership rights to the copyright, then she lacks standing to sue for infringement. *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 91 (2d Cir. 1998) ("Under United States law, an owner . . . may sue for infringement in a United States court only if it meets the standing test of 17 U.S.C. § 501(b), which accords standing only to the legal or beneficial owner of an 'exclusive right.'").

Defendants contend that the submission form, containing the contest terms and conditions, including those relating to assignment, constitutes a binding contract under New York law. Although the Copyright Act is a federal statute, "the vast bulk of contractual issues must be resolved under state law, given the silence of the Copyright Act in addressing such issues as what persons are competent to enter into binding contracts . . . how to construe ambiguous contractual language, and what circumstances warrant rescission of a previously entered contact." 1-1 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 1.01[B][3][a].

Both I.C. and her mother signed the submission form prior to submitting the Hi/Bye contest entry. Am. Compl. at ¶¶ 13, 18, 20; Submission Form, Dkt. No. 47-1; Contest Submission, Dkt. No. 47-2. Notwithstanding the signed writing, plaintiff argues that the terms of the contest are

not enforceable, and thus any provision purporting to assign the copyright is also not enforceable, for several reasons.  The Court addresses each below.

### a.  Lack of Mutual Assent

Plaintiff first contends that the terms of the contest rules are not enforceable because there was no mutual assent, a necessary element for any valid contract under New York law.  I.C. was only a second-grade student at the time she signed the submission form; too young to have understood the contest rules and to have agreed to their material terms, plaintiff maintains.  Accordingly, plaintiff argues that without the required mutual assent, no contract was formed, and any terms purporting to assign the copyright of the Hi/Bye design are unenforceable.

Under New York law, the elements necessary to establish the existence of an enforceable agreement are:  "an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound."  *Kowalchuk v. Stroup*, 873 N.Y.S. 2d 43, 46 (App. Div. 2009).  Plaintiff does not dispute that the other elements necessary to form an enforceable contract exist, but rather solely contends that I.C.'s age prevented her from understanding and thereby assenting to the material terms of the contest rules.  "To create a binding contract, there must be a meeting of the minds as to the material terms of the agreement."  *Metro. Enterprises N.Y. v. Khan Enter. Const., Inc.*, 1 N.Y.S.3d 328, 329 (App. Div. 2015).

The complaint fails to plausibly allege that I.C. did not manifest to the terms of the agreement due to her age.  I.C. (and her mother) signed a written agreement.  Although she is a minor, "[she] who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them, and there can be no evidence for the jury as to [her] understanding of its terms."  *Metzger v. Aetna Ins. Co.*, 125 N.E. 814, 816 (N.Y. 1920).  *Accord Pimpinello v. Swift & Co.*, 170 N.E. 530, 531 (N.Y. 1930) ("Ordinarily, the signer of a deed or other instrument, expressive of a jural act, is

conclusively bound thereby.").  Putting aside that I.C.'s mother *also* signed the agreement, the complaint does not allege any fraud or mistake.  Absent any such allegation, plaintiff is conclusively presumed to have assented to the terms of the agreement.  *See Pimpinello*, 170 N.E. at 531 ("If the signer is illiterate, or blind, or ignorant of the alien language of the writing, *and the contents thereof are misread or misrepresented* to him by the other party, or even by a stranger, unless the signer be negligent, the writing is void) (emphasis added).

Moreover, as discussed below in further detail, contracts signed by minors are voidable, not void.  *See Scott Eden Mgmt. v. Kavovit*, 563 N.Y.S.2d 1001, 1002 (Sup. Ct. 1990); 66 N.Y. Jur. 2d Infants and Other Persons Under Legal Disability § 9 ("Infancy does not disable one from entering into contracts.  The contracts of an infant are not void but voidable at the infant's election.") (footnotes omitted).  If minors could simply claim that they never assented to the terms of written agreements due to their age, then the contracts of minors would generally be void.  But the protection New York law provides to minors is to allow them the right to disaffirm a contract, as discussed below, not to find that no enforceable contract exists.  "Infancy does not disable one from entering into contracts, and . . . [her] position and [her] acts are those of any responsible person."  *Cont'l Nat. Bank v. Strauss*, 32 N.E. 1066, 1067 (N.Y. 1893).  Plaintiff cannot claim lack of mutual assent on the basis of her age alone.

Because plaintiff concedes that I.C. and her mother signed the submission form, and fails to allege fraud or mistake, the complaint fails to plausibly allege that no enforceable contract was formed due to a lack of mutual assent.

### b.  Infancy

As noted above, plaintiff argues that the contract is voidable because I.C. was a minor at the time she signed the agreement, and thus may disaffirm the contract.  It is well established under

New York law that "[a]n infant's contract is voidable and the infant has an absolute right to disaffirm." *Scott Eden Mgmt. v. Kavovit*, 563 N.Y.S.2d 1001, 1002 (Sup. Ct. 1990).

First, the Court notes that defendants make a number of plainly incorrect arguments regarding when a contract may be disaffirmed on the grounds of infancy under New York law. For example, defendants argue that because I.C.'s mother signed the contract, I.C. is precluded from disaffirming it. That is not so; "a minor is not bound by a release executed by his parent." *Alexander v. Kendall Cent. Sch. Dist.*, 634 N.Y.S.2d 318, 319 (App. Div. 1995). Defendants assert that plaintiff ratified the contract by waiting nearly three years before filing suit. But defendants again miss the mark—I.C. is still a minor, and the cases defendants rely on expressly state that a minor must disaffirm a contract "within a reasonable time after becoming of age," *not* "within a reasonable time after signing the contract," as defendants argue. *See Career Placement of White Plains, Inc. v. Vaus*, 354 N.Y.S.2d 764, 768 (Sup. Ct. 1974) ("Upon reaching majority the infant must disaffirm within a reasonable time after becoming of age, or his silence will be considered a ratification) (internal quotation marks omitted). Finally, defendants would have the Court hold that the contest rules cannot be disaffirmed by I.C. because they are reasonable, and citing to N.Y. Gen. Oblig. Law § 3-101 as controlling authority, insist that minors cannot disaffirm reasonable contracts. But § 3-101(2) states that for contracts made between April 13, 1941 and September 1, 1974, a person over the age of eighteen may not disaffirm a contract on the grounds of infancy, where the contract was made in connection with a business in which the infant was engaged and was reasonable and provident when made. I.C. submitted her design in 2011, she is not yet eighteen years of age, and was not engaged in a business when submitting her t-shirt design; § 3-101(2) clearly does not apply.

Notwithstanding the misleading arguments above, defendants correctly note that a minor cannot disaffirm a contract where doing so would put her in a better position than she otherwise would have been absent the contract. It has long been established under New York law that "[t]he

12

privilege of infancy is to be used as a shield, and not as a sword." *Rice v. Butler*, 55 N.E. 275, 276 (N.Y. 1899).  In other words:  "After disaffirmance, the infant is not entitled to be put in a position superior to such a one as he would have occupied if he had never entered into his voidable agreement.  He is not entitled to retain an advantage from a transaction which he repudiates." *Joseph v. Schatzkin*, 181 N.E. 464, 465 (N.Y. 1932); *see also Francis v. New York & B.E.R. Co.*, 15 N.E. 192, 193 (N.Y. 1888) ("The plaintiff cannot rescind if he retains in himself, or withholds through another, any fruit of the contract."); *Bach v. Long Island Jewish Hosp.*, 267 N.Y.S.2d 289, 291 (Sup. Ct. 1966) ("Although a minor is permitted to disaffirm contracts under certain conditions, the rule is due not so much to the minor's disability as to a privilege extended for the minor's protection.") (internal citation omitted).

The requirement that a minor not retain an advantage from a repudiated contract generally requires the minor to restore consideration benefits received as part of the contract.  *See* CPLR § 3004 (stating that an infant need not tender restoration of benefits received prior to disaffirmance, "but the court may make a tender of restoration a condition of its judgment, and may otherwise in its judgment so adjust the equities between the parties that unjust enrichment is avoided").  As interpreted by courts, the restoration of consideration has also required that infants be held responsible for wear and tear on goods returned.  *Scott Eden,* 563 N.Y.S.2d at 1002.  If a minor cannot return the benefits obtained, such as a minor who demands the return of her money for air fare paid after flying from New York to Los Angeles, then she "is effectively precluded from disaffirming the contract in order to get back the consideration" she has given.  *Id.* at 1002–03 (discussing *Vichnes v. Transcontinental & Western Air,* 18 N.Y.S.2d 603 (App. Term 1940)).

The Court finds that plaintiff is precluded from disaffirming the contract.  Although the complaint alleges that plaintiff tendered the $100 gift card and t-shirts she received for winning the contest, repudiating the contract would nevertheless put her in a superior position than she would

have occupied had she never entered the contest.  Prior to submitting her contest entry, plaintiff owned a simple hand-drawn design on a template provided by Miss Matched.  But by repudiating the contract after Miss Matched has created an entire catalogue of clothing and accessory lines using the design, plaintiff would regain ownership of the design at a significant advantage—after Miss Matched has spent resources developing and marketing that catalogue.  Plaintiff may not retain this "fruit of the contract" under New York law.  *See Francis*, 15 N.E. at 193.

The rationale of several cases supports the Court's findings.  Most relevant, in *Mutual Milk & Cream Co. v. Prigge*, 98 N.Y.S. 458 (App. Div. 1906), a minor agreed to work as a milk-wagon driver for the plaintiff, and signed a contract that included a restrictive covenant not to solicit the plaintiff's customers for three years after termination.  Within three months of entering the agreement, the minor quit, went to work for a rival milk-wagon driver, and solicited business from the plaintiff's customers.  *Id.*  Plaintiff brought suit to enforce the restrictive covenant and the minor attempted to disaffirm the contract on the grounds of infancy, but the court upheld the validity of the restrictive covenant.  The court explained that the minor could not repudiate the restrictive covenant because doing so would allow him to utilize "the knowledge he acquired while in [plaintiff's] employ," and thus put the minor in a better position than at the time of the repudiated transaction.  *Id.* at 459; *see also Scott Eden*, 563 N.Y.S.2d at 1003 (minor unable to disaffirm performance contract with entertainment industry agency where "infant would be put in a position superior to that which he would have occupied had he never entered into the contract with plaintiff").

Similarly, if plaintiff disaffirmed the contract she would be in a superior position than at the time she entered the contest—owning the copyright to a design (assuming it is copyrightable, as discussed below) already featured in an extensive catalogue of clothing and accessories.  Because New York law prohibits a minor from using the privilege of infancy as a sword, gaining an

14

advantage through repudiation she would not otherwise have enjoyed, plaintiff cannot disaffirm the contract.

### c. Unconscionability

Plaintiff finally contends that the contest rules are void because the terms of the contract are unconscionable.  Under New York law, an unconscionable contract is one that "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988) (quoting *Mandel v. Liebman*, 100 N.E.2d 149, 152 (N.Y. 1951)); *see also* 22 N.Y. Jur. 2d Contracts § 151 ("The concept of 'unconscionability' is reserved for the type of agreement so one-sided that it shocks the conscience and confounds the judgment of any person of common sense, such that no individual in his or her senses and not under a delusion would make on the one hand, and as no honest or fair person would accept, on the other.") (footnotes omitted).

"The determination of unconscionability is a matter of law for the Court to decide."  *Simar Holding Corp. v. GSC*, 928 N.Y.S.2d 592, 595 (App. Div. 2011); *accord* 22 N.Y. Jur. 2d Contracts § 153 ("Whether a contract or a contract provision is unconscionable presents an issue of law for the court to decide.").  "Where the significant facts germane to the unconscionability issue are essentially undisputed, the court may determine the issue without a hearing." *Emigrant Mortgage Co. v. Fitzpatrick*, 945 N.Y.S.2d 697, 700 (App. Div. 2012) (quoting *Scott v. Palermo*, 649 N.Y.S.2d 289, 291 (App. Div. 1996)).  However, "[w]here there is doubt . . . as to whether a contract is fraught with elements of unconscionability, there must be a hearing where the parties have an opportunity to present evidence with regard to the circumstances of the signing of the contract, and the disputed terms' setting, purpose and effect." *Davidovits v. DeJesus Realty Corp.*, 474 N.Y.S.2d 808, 809 (App. Div. 1984)

In order for a contract be found unconscionable, the party alleging the defect must show "that the contract was both procedurally and substantively unconscionable when made . . ." *Gillman* 534 N.E.2d at 828.  Courts weigh procedural and substantive unconscionability on a "sliding scale"; "the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." *Simar*, 928 N.Y.S.2d at 595 (quoting *State v. Wolowitz,* 96 A.D.2d 47, 68 (N.Y. App. Div. 1983). "'Substantive elements of unconscionability appear in the content of the contract per se; procedural elements must be identified by resort to evidence of the contract formation process' and meaningfulness of the choice." *Emigrant Mortgage Co. v. Fitzpatrick*, 945 N.Y.S.2d 697, 699 (App. Div. 2012) (quoting *Matter of Friedman*, 407 N.Y.S.2d 999, 1008 (App. Div. 1978).

Plaintiff offers several reasons as to why the contest rules are procedurally unconscionable, relying heavily on the purported disparity in bargaining power between I.C., a second grader, and Miss Matched, a sophisticated business, when she agreed to the terms of the contest rules.  Plaintiff also argues that by conducting the contest through the auspices of the school, Miss Matched used the school's position of authority to induce I.C.'s participation in the contest.  Without the benefit of an evidentiary hearing, the Court agrees that the complaint contains sufficient factual allegations to plausibly claim procedural unconscionability.

"[T]o determine whether there has been procedural unconscionability in the contract formation process, a court must assess such factors as: (1) the size and commercial setting of the transaction; (2) whether there was a 'lack of meaningful choice' by the party claiming unconscionability; (3) the 'experience and education of the party claiming unconscionability;' and (4) whether there was 'disparity in bargaining power.' *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 787 (2d Cir. 2003) (quoting *Gillman*, 534 N.E.2d at 828).  Other appropriate factors to consider include whether there was deception, high-pressured tactics, and the use of fine print. *Id.*  Due to a

potential a disparity in bargaining power, age and education of I.C., and role the school may have played in securing students' submissions, plaintiff's complaint has sufficiently alleged facts that raise "doubt . . . as to whether a contract is fraught with elements of unconscionability," *see Davidovits*, 474 N.Y.S.2d at 809.  Accordingly an evidentiary hearing regarding the contract formation process is warranted.

Notwithstanding, the Court notes that I.C.'s mother also signed the submission form.  *See* Am. Compl. at ¶ 18, Contest Submission.  I.C.'s mother is assumed to have read the terms of the contest before she signed the submission form.  *See Patterson v. Somerset Investors Corp.*, 946 N.Y.S.2d 217, 218 (App. Div. 2012) (finding that "a party who signs a document without any valid excuse for having failed to read it is conclusively bound by its terms") (internal quotation marks and citation omitted).  At the evidentiary hearing, the Court will evaluate all of the relevant facts related to the contract's formation, not only whether the contract formation process between Miss Matched and I.C. was procedurally unconscionable—as alleged in the complaint and therefore accepted as true for purposes of this motion—but also whether the process was procedurally unconscionable between Miss Matched and I.C., as advised and supervised by her mother.

Plaintiff also argues that the terms of the contest were substantively unconscionable because she was not provided compensation for sales of merchandise featuring the Hi/Bye design.  The Court has doubts as to whether plaintiff can demonstrate substantive unconscionability.  At the time Miss Matched created the contest, it expected to receive simple hand-drawn designs by elementary school children on a basic template it provided.  Although the prizes awarded were relatively modest, I.C. only owned a simple drawing at the time she submitted her contest entry—one whose creation was prompted by the contest itself—rather than a design supporting an entire catalogue of merchandise.  Nevertheless, because procedural and substantive unconscionability operate on a "sliding scale," *see Simar*, 928 N.Y.S.2d at 595, the prudent course is for the Court to defer judgment

17

on substantive unconscionability, pending an evidentiary hearing, so that both procedural and substantive unconscionability can be evaluated together.

Plaintiff's complaint alleges facts sufficient to warrant an evidentiary hearing regarding the unconscionability of the contest rules. Because the provisions of the rules purporting to assign ownership rights to the Hi/Bye design are contained in the allegedly unconscionable contract, the Court cannot conclude at this stage that plaintiff lacks standing to bring this action.

### 3. Weight Afforded to Copyright Office Denial

Prior to turning to whether the Hi/Bye design is copyrightable, the Court must first address defendants' contention that the Copyright Office's decision to reject plaintiff's application for registration is "entitled to considerable weight" from the Court. Because the Copyright Office determined that plaintiff's design "lacks the authorship necessary to support a copyright claim," defendants argue that the Court should, in essence, apply a deferential standard of review to this determination. In making this argument, however, defendants conflate the standard applicable in infringement actions brought under 17 U.S.C. § 411(a) with actions brought under 17 U.S.C. § 701(e).

As the court in *Ward v. Nat'l Geographic Soc.*, 208 F. Supp. 2d 429, 445 (S.D.N.Y. 2002) explained, an individual whose registration application has been denied by the Copyright Office may potentially proceed through two routes. First, an applicant may institute an action under § 701(e) and seek to overturn the Copyright Office's denial of registration under the Administrative Procedure Act. A district court's standard of review in such a case would be deferential and limited to the propriety of the denial; the agency's action may be set aside only if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Ward* 208 F. Supp. 2d at 445 (quoting 5 U.S.C. § 706(2)(A)).

Second, an applicant may proceed under § 411(a) and institute an action for infringement, serving the Register of Copyrights with appropriate notice.  The Copyright Office's denial of registration in that instance "at most deprives the plaintiff . . . of Section 410(c)'s presumption of validity, which is not conclusive on the district court in any case."  *Id.*; *see also id.* at 446 ("Courts in Section 411(a) cases typically have determined copyright validity independently and not confined themselves to the propriety of the Copyright Office's denial of registration."); 3 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 12.11[B][3] ("The most common pattern . . . is for courts adjudicating infringement actions simply to reach their own determinations, without adverting either to the agency's general level of expertise or to the Copyright Office's particular determination via its issuance (or denial) of a certificate."  The Court must accordingly make an independent determination as to whether plaintiff's design is entitled to copyright protection.

### 4.  *Originality*

Defendants argue that plaintiff's hand-drawn design lacks the requisite originality to qualify for copyright protection. The crux of defendant's argument is that because the design consists of common words and familiar symbols within the public domain, both of which are not copyrightable, plaintiff's design is not original and therefore the copyright infringement claim must be dismissed. Although it is a close question, the Court finds that plaintiff's selection and arrangement of the non-copyrightable elements of the design possess at least some degree of creativity.  Because plaintiff has also pleaded that she independently created the design, the Court finds that the design is sufficiently original to survive the motion to dismiss.

"To qualify for copyright protection, a work must be original to the author."  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).  "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied

from other works), and that it possesses at least some minimal degree of creativity." *Id.*[3]  Originality

does not require that the work "must be either novel or unique, it simply means a work

independently created by its author, one not copied from pre-existing works, and a work that comes

from the exercise of the creative powers of the author's mind, in other words, the fruits of the

author's intellectual labor." *Boisson v. Banian, Ltd*, 273 F.3d 262, 268 (2d Cir. 2001) (internal

quotation marks, citations, and brackets omitted).  Thus, "the requisite level of creativity is extremely

low," and "[t]he vast majority of works make the grade quite easily, as they possess some creative

spark, no matter how crude, humble or obvious it might be." *Feist*, 499 U.S. at 345.

The originality of a copyrighted work is ordinarily a question of fact to be decided at trial.

*Vargas v. Pfizer, Inc.*, 418 F. Supp. 2d 369, 372 (S.D.N.Y. 2005).  Because plaintiff has attached the

design in question to her complaint, however, the Court may consider whether the design is entitled

to copyright protection.  *See Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F. Supp. 2d 542, 549

(S.D.N.Y. 2011) (considering whether design elements visible in picture of dress attached as exhibit

to complaint are entitled to copyright protection) *aff'd sub nom. Jovani Fashion, Ltd. v. Fiesta Fashions*,

500 F. App'x 42 (2d Cir. 2012).

Plaintiff does not allege that any of the individual elements of her design are original.  The

individual elements of her design consist of the words "Hi" and "bye," as well as familiar smiley and

frowning faces that many children have drawn (and tweens have texted).  Common phrases and

familiar designs are ordinarily not entitled to copyright protection.  *See* 37 C.F.R. § 202.1(a) (stating

---

[3] A footnote in Delta Galil's reply brief suggests, for the first time, that plaintiff did not independently create her design because other similar graphic designs on t-shirts existed prior to plaintiff's contest submission. Defendant's contention is rebutted by the terms of the contest rules, which require any submissions to be "wholly original."  Contest Rules, Dkt. No. 47-1.  In any event, the Court need not consider a new argument raised for the first time in a reply brief, let alone in a footnote.  *See Playboy Enterprises, Inc. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997) (stating that "[a]rguments made for the first time in a reply brief need not be considered by a court" and collecting cases), *aff'd* 159 F.3d 1347 (2d Cir. 1998).

that "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring" are not subject to copyright); *Edwards v. Raymond*, 22 F. Supp. 3d 293, 298–99 (S.D.N.Y. 2014) ("It is well established that common phrases are not eligible for copyright protection."), *appeal dismissed* (July 28, 2014); *William S. Geiger Corp. v. Gigi Accessories, Inc.,* No. 97 Civ. 5034, 1997 WL 458668, at *2 (S.D.N.Y. Aug.11, 1997) ("plaintiff has no right to copyright . . . a common geometrical shape"); *cf. Nikon, Inc. v. Ikon, Corp.*, No. 89 CIV.6044(KMW)(NG), 1992 WL 114509, at *5 (S.D.N.Y. May 1, 1992) (noting that a smiley face graphic design is "ubiquitous in commerce, appearing on items as diverse as wrapping paper and undershorts").

Rather, plaintiff argues that the particular selection and arrangement of her design is original, and thus entitled to copyright protection.  Although consisting of uncopyrightable elements, an artist may nevertheless protect the way she has "selected, coordinated, and arranged" the elements of her work.  *See Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1003–04 (2d Cir. 1995).  Thus, even a telephone directory may be copyrightable, if its listings are selected, coordinated, or arranged in an original way.  *See Feist*, 499 U.S. at 362.  Notwithstanding, plaintiff cannot copyright the idea of arranging smiley and frowning faces with the words high and bye—only the particular "expression of that idea can receive copyright protection."  *Queenie, Ltd. v. Sears, Roebuck & Co.*, 124 F. Supp. 2d 178, 180 (S.D.N.Y. 2000).

At the motion to dismiss stage, the Court cannot conclude that the selection and arrangement of plaintiff's design lacks the "extremely low" requisite level of creativity to be original. *See Feist*, 499 U.S. at 345.  Here, plaintiff chose to place the positive smiley face and the word "hi" on the front of the shirt, greeting another person approaching the wearer; and chose to place the negative frowning face and the word "bye" on the back of the shirt, which another person would see when the wearer leaves.  Although the selection and arrangement of these elements may have

only required a modest amount of creativity, that is all that is needed for plaintiff to survive a motion to dismiss.

Defendants rely primarily on *Oriental Art Printing, Inc. v. Goldstar Printing Corp.* to argue that plaintiff's arrangement is not sufficiently creative to be original.  175 F. Supp. 2d 542 (S.D.N.Y. 2001) *aff'd in part, appeal dismissed in part sub nom. Oriental Art Printing Inc. v. GS Printing Corp.*, 34 F. App'x 401 (2d Cir. 2002).  In *Oriental Art*, the court found that the plaintiff's photographs—direct depictions of common Chinses food dishes as they appeared on plates served to restaurant customers—constituted the "rare case" of photographs lacking the creative or expressive elements necessary to render them original. *Id.* at 546–47.  But defendants' reliance is misplaced.  The court in *Oriental Art* specifically noted that the photographs were not designed with creativity or art in mind; rather, the photographs served a "purely utilitarian purpose" in helping customers identify the ingredients of dishes on a take-out menu.  *Id.* at 547.  In contrast, plaintiff alleges that she specifically had creativity in mind when creating her design—indeed, originality was one of three criteria from which contest entries were judged.

The Court finds that plaintiff's Hi/Bye design demonstrates sufficient creative expression to meet the originality requirement for copyright protection for purposes of defendants' motion to dismiss.

### 5.  Copying and Substantial Similarity

Defendants next argue that even if plaintiff's design is sufficiently original to warrant copyright protection, the designs featured on the LittleMissMatched clothing line nevertheless do not infringe on plaintiff's design.  To succeed on an infringement claim, a plaintiff must demonstrate that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of

plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 63 (2d Cir. 2010) (internal quotation marks and citation omitted).

Defendants assert that Miss Matched did not actually copy plaintiff's work.  Because direct evidence of copying is rare, a courts may ordinarily instead "infer [copying] upon a showing that defendant had access to the copyrighted work, and that the allegedly infringing material bears a substantial similarity to copyrightable elements of plaintiff's work." *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir. 1992).  The complaint alleges here, however, that this is the rare case where there is direct evidence of copying—Miss Matched offered a t-shirt with the Hi/Bye design for sale in the same announcement naming I.C. as one of the two contest winners, and offered the t-shirt at a discount to I.C.'s elementary school "[t]o celebrate these two student designs."  Announcement, Dkt. No. 47-3.  Plaintiff's complaint more than sufficiently alleges that Miss Matched actually copied her design for purposes of surviving defendants' motion to dismiss.

Defendants also argue that the designs sold by Miss Matched and plaintiff's Hi/Bye design are not substantially similar.  Ordinarily, "[t]he standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same." *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 111 (2d Cir. 2001) (brackets and internal quotation marks omitted). However, "a more refined analysis is required where the allegedly copied work is not wholly original," but rather incorporates uncopyrightable elements.  *Boisson*, 273 F.3d at 272 (internal quotation marks and citation omitted).

In applying the "more discerning" test, courts must look for "substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed work." *Id.*  Notwithstanding, the Second Circuit has cautioned "not to dissect the works at issue into separate components and compare only the copyrightable elements," but rather to be "guided

by comparing the total concept and feel of the contested works." *Id.* (internal quotation marks and citation omitted). Indeed, a defendant "may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art—the excerpting, modifying, and arranging of unprotectable elements—are considered in relation to one another." *Gaito*, 602 F.3d at 66 (2d Cir. 2010) (brackets and ellipses omitted) (quoting *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134 (2d Cir. 2003).

Defendants point to several minor differences between the designs sold under the LittleMissMatched brand and plaintiff's Hi/Bye design. These include: the shape of the smiley faces' and frowning faces' eyes (two circles versus two vertical parallel lines); the shape of the smiley faces' mouth (U-shaped line of continuous thickness versus U-shaped arch that is thicker in the center); the number of times "hi" and "bye" are written on the front and back of the shirt, respectively (only once below the design versus both above and below the design); and the lack of colored sleeves or corners on the LittleMissMatched design, which plaintiff's Hi/Bye design featured.

Although defendants discuss at length the differences between the designs, the overall concept and feel of the designs is sufficiently similar for purposes of surviving the motion to dismiss. Tellingly, the differences defendants point to nearly all relate to deviations in the non-copyrightable elements of the designs, rather than the copyrightable selection and arrangement of those elements. But merely focusing on minor deviations, even in great detail, is not sufficient to overcome the similarity between the two works at this stage of the litigation. *See Knitwaves*, 71 F.3d at 1004 (finding that "lengthy recitation of differences" that required "considerable ink to describe" did "little to lessen a viewer's overwhelming impression" that two works were substantially similar.)

### 6.  *Lack of Distribution to the Public*

Sock Drawer individually argues that even if plaintiff's complaint states a claim for copyright infringement, the claim must nevertheless be dismissed with respect to Sock Drawer.  Specifically, Sock Drawer argues that the complaint fails to allege that Sock Drawer sold any merchandise with the Hi/Bye design to the "public," as required under § 106(3).  It maintains that the complaint only alleges sales by Sock Drawer of Miss Matched's assets to Delta Galil, rather than the public at large.  The Court disagrees, and finds that the complaint alleges sales by Sock Drawer to the public.

17 U.S.C. § 106 grants the owner of a copyright the exclusive right "to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending[.]"  17 U.S.C. § 106(3).  The exclusive right to distribution under § 106(3) by its terms does not encompass all distributions; it is expressly limited to distributions of the copyrighted work "to the public."  *Id.*; *see also Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997) ("In order to establish 'distribution' of a copyrighted work, a party must show that an unlawful copy was disseminated 'to the public.'"); 2-8 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 8.11[C] ("But not just any distribution of copies or phonorecords falls within this right—it is limited to such distributions as are made 'to the public.'").

Sock Drawer is correct that the complaint alleges that Sock Drawer sold Miss Matched's assets to Delta Galil.  Am. Compl. at ¶ 25.  But the complaint *also* alleges that "Sock Drawer, and then Delta Galil, continued the business of Miss Matched. . . . *they* continued to use . . . the Hi/Bye Design to sell children's clothing and accessors.  *They* also continued to sell merchandise out of at least six Miss Matched's former retail locations . . . ."  Am. Compl. at ¶ 26 (emphasis added).  Thus,

the complaint pleads sufficient factual allegations that *both* Sock Drawer and Delta Galil sold merchandise with the Hi/Bye design to the public.

Because plaintiff's complaint sufficiently pleads factual allegations to state a claim for copyright infringement, defendants' motion to dismiss the infringement claim is DENIED.

### B.  *State Law Claims*

Defendants argue that plaintiff's state law claims for unjust enrichment and quantum meruit are simply recast claims for copyright infringement, and must be dismissed because they are preempted by the Copyright Act.  The Court agrees.  "Under the complete-preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims—i.e., completely preempted."  *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005).  The Second Circuit has held that the Copyright Act is one such statute. *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004).  Section 301 of the Copyright Act preempts a state law claim when (i) the work at issue "come[s] within the subject matter of copyright" and (ii) the right being asserted is "equivalent to any of the exclusive rights within the general scope of copyright."  17 U.S.C. § 301.

The subject matter requirement is satisfied where "the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works."  *Briarpatch*, 373 F.3d at 305.  "If the ideas that are the subject of a claim are fixed in writing—whether or not the writing itself is at issue—the claim is within the subject matter of copyright."  *Faktor v. Yahoo! Inc.*, No. 12 CIV. 5220 RA, 2013 WL 1641180, at *4 (S.D.N.Y. Apr. 16, 2013) (internal quotation marks omitted).

Here, plaintiff seeks compensation for a design which was "fixed in writing" in her contest submission.  Even if the Court were to later conclude that the Hi/Bye design was not entitled to

26

copyright protection, "the preemptive reach of the Copyright Act encompasses state law claims concerning uncopyrightable material." *Panizza v. Mattel, Inc.,* No. 02 CV 7722(GBD), 2003 WL 22251317, at *3 (S.D.N.Y. Sept. 30, 2003); *see also Katz Dochrermann & Epstein, Inc. v. Home Box Office,* No. 97 CIV. 7763(TPG), 1999 WL 179603, at *2 (S.D.N.Y. Mar. 31, 1999) ("It is well established . . . that the scope of *preemption* under § 301 is not the same as the scope of copyright *protection,* and the former is in fact broader than the latter." (emphasis in original). Accordingly, the subject matter requirement is met.

The second prong, the "general scope requirement," is satisfied where "the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." *Briarpatch,* 373 F.3d at 305 (internal quotation marks omitted). "In other words, the state law claim must involve acts of reproduction, adaptation, performance, distribution or display." *Id.* If the state law claim includes "any extra elements that make it qualitatively different from a copyright infringement claim," however, then the claim is not preempted. *Id.* Courts "take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim." *Id.* at 306.

Under New York law, unjust enrichment and quantum meruit claims are analyzed together as a single quasi-contract claim. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,* 418 F.3d 168, 175 (2d Cir. 2005). This is because "quantum meruit and unjust enrichment are not separate causes of action; rather, unjust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit, meaning 'as much as he deserves,' is one measure of liability for the breach of such a contract." *Di Simone v. CN Plumbing, Inc.,* No. 13–CV–5088, 2014 WL 1281728, at *6 (E.D.N.Y. Mar. 31, 2014) (internal quotation marks omitted) (quoting *Seiden Assocs., Inc. v. ANC Holdings, Inc.,* 768 F. Supp. 89, 96 (S.D.N.Y. 1991) *rev'd on other grounds,* 959 F.2d 425 (2d Cir. 1992)). "To prevail on a claim of unjust enrichment, a party must show that (1) the other party was

enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered . . . ." *Id.* at *5 (internal quotation marks omitted). "In order to recover in quantum meruit under New York law, a claimant must establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Mid–Hudson,* 418 F.3d at 175 (internal quotation marks omitted).

The overwhelming majority of courts in this circuit, including this Court, have held that unjust enrichment claims do not contain an "extra element" and thus satisfy the general scope requirement. *See Einiger v. Citigroup, Inc.*, No. 1:14-CV-4570-GHW, 2014 WL 4494139, at *7 (S.D.N.Y. Sept. 12, 2014); *accord Briarpatch,* 373 F.3d at 306 ("While enrichment is not required for copyright infringement, we do not believe that it goes far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim."); *Ardis Health, LLC v. Nankivell,* No. 11 Civ. 5013(NRB), 2012 WL 5290326, at *10 (S.D.N.Y. Oct. 23, 2012) ("Courts have generally concluded that the theory of unjust enrichment protects rights that are essentially equivalent to rights protected by the Copyright Act; thus, unjust enrichment claims related to the use of copyrighted material are generally preempted." (internal quotation marks omitted)). The crux of plaintiff's unjust enrichment and quantum meruit claims allege that defendants unjustly benefited from plaintiff's design, and they have used that design without paying plaintiff fair compensation. These allegations are not qualitatively different from her copyright infringement claim.

Although plaintiff attempts to distinguish her state law claims by alleging that she was "induced" to submit her t-shirt design in the contest, that alone does not change the nature of her unjust enrichment and quantum meruit claims. *See Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 851 (2d Cir. 1997) ("An action will not be saved from preemption by elements such as awareness or intent, which alter the action's scope but not its nature.") (internal quotation marks

omitted); *see also Faktor*, 2013 WL 1641180, at *4–5 (unjust enrichment claim under New York law preempted where plaintiff created written proposal for web series for defendants, who replicated concept without permission).  Accordingly, the Court finds that plaintiff's unjust enrichment and quantum meruit claims are completely preempted by the Copyright Act.  Defendants' motion to dismiss the unjust enrichment and quantum meruit claims is GRANTED.

## IV.    CONCLUSION

For reasons outlined above, defendants' motion to dismiss is GRANTED in part and DENIED in part.  The Clerk of Court is directed to terminate the motions pending at Docket Numbers 54 and 57.

SO ORDERED.

Dated:  September 29, 2015
New York, New York
_____
GREGORY H. WOODS
United States District Judge

29